**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE: 0:18-cv-61954-XXXX

ANTONIO VALLEJO,

        Plaintiff,

v.

U.S. BANK NATIONAL ASSOCIATION
AS TRUSTEE FOR BANC OF
AMERICA FUNDING CORPORATION
MORTGAGE PASS-THROUGH
CERTIFICATES SERIES 2007-7, and
NATIONSTAR MORTGAGE, LLC,

        Defendants.

_____/

**<u>FIRST AMENDED COMPLAINT</u>**

*{Jury Trial Demanded}*

ANTONIO VALLEJO ("VALLEJO" or the "Plaintiff"), by and through his

undersigned counsel, files his First Amended Complaint against Defendants, U.S. BANK

NATIONAL ASSOCIATION AS TRUSTEE FOR BANC OF AMERICA FUNDING

CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-7

("U.S. BANK"), and NATIONSTAR MORTGAGE, LLC ("NATIONSTAR") (U.S.

BANK and NATIONSTAR are collectively referred to as the "Defendants"), and alleges:

**INTRODUCTION**

1.     Plaintiff brings this action for damages and equitable relief against U.S. BANK and NATIONSTAR for their repeated and unrelenting pattern and practice of attempting to collect a debt, and enforce a security interest against Plaintiff, when Defendants were ordered, by the U.S. Bankruptcy Court, to have *no contact whatsoever* with the Plaintiff.  Defendants were well aware the Court's order, and federal and state laws which specifically forbid such contact and attempts to enforce rights which they did not have.  Nearly ten (10) years have transpired since the United States Bankruptcy Court ordered that the mortgage subject to this lawsuit, was deemed unsecured, and null and void.  Defendants' unlawful tactics over a period of several years, include the filing of wrongful foreclosures against VALLEJO in the state courts, to the filing of claims in the United States Bankruptcy Court, to the constant overuse of the United States Postal Service to send a series of harassing letters, notices, statements, insurance default letters, notices of default, and other correspondence, insisting they can still enforce their legal rights – all when Defendants knew their conduct was in violation of the federal and state laws, and in contempt of prior Court orders.  As recent as November 20, 2018, Defendants persist with their egregious, abusive tactics manifesting their total disregard of the federal and state laws, and their absolute indifference to prior Court orders.  VALLEJO'S credit reports also reflected the mortgage and note as a debt, even though the mortgage was extinguished, and the personal debt was discharged.

2.     By engaging in this vexatious conduct, Defendants have violated the Fair Debt Collection Practices Act §§ 1692 et seq. ("FDCPA"), the Fair Credit Reporting Act, §§ 1681 et seq. ("FCRA"), Florida Deceptive And Unfair Trade Practices Act §§ 501.201

et seq. ("FDUTPA"), Florida Consumer Collection Practices Act §§ 559.55 et seq. ("FCCPA"), and have committed numerous acts of fraud.

## JURISDICTION AND VENUE

3.      This is an action for damages and equitable relief within the jurisdiction of this court pursuant to the Fair Debt Collection Practices Act §§ 1692 et seq. ("FDCPA") and the Fair Credit Reporting Act, §§ 1681 et seq. ("FCRA"), Florida Deceptive And Unfair Trade Practices Act §§ 501.201 et seq. ("FDUTPA"), Florida Consumer Collection Practices Act §§ 559.55 et seq. ("FCCPA"), and for Fraud.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions on which the claims are based occurred in this District.

5.      Jurisdiction is appropriate in this Court as it is predicated on a federal statute, and thus this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## THE PARTIES

6.      Plaintiff, VALLEJO is an individual over the age of eighteen years, is *sui juris*, and resides in Broward County, Florida.

7.      Defendant, U.S. BANK has its principal place of business in Cincinnati, Ohio and regularly conducts business in the State of Florida and is otherwise *sui juris*.  At all times material, U.S. BANK acted as principal for its service agent, NATIONSTAR.

8.      Defendant, NATIONSTAR is a Delaware limited liability corporation conducting business in Broward County, Florida. and is otherwise *sui juris*.  At all times material to this action, NATIONSTAR serviced the subject mortgage as an agent on behalf of its principal, U.S. BANK

## BACKGROUND

9.      On or about June 22, 2007, the Plaintiff, ANTONIO VALLEJO, along with his former spouse, Susana Tomadin ("S. Tomadin"), executed and delivered a Promissory Note (the "Promissory Note") in the amount of $540,000.00, and a Mortgage (the "Mortgage") in favor of Bank of America, N.A. (the Promissory Note and Mortgage are collectively referred to as the "Subject Loan") encumbering the real property located at 1263 Skylark Drive, Weston, Florida 33327 (the "Subject Property").

10.      The Mortgage was recorded on July 2, 2007 in Official Records Book 44273, Page 741 of the Public Records of Broward County, Florida.

11.      Prior to execution of the Mortgage, on or about December 1, 2003, VALLEJO and S. Tomadin executed a prior mortgage in favor of Bank of America, N.A., recorded on December 15, 2003 in Official Records Book 365, Page 78, of the Public Records of Broward County, Florida in the amount of $200,000.00 (the "$200,000.00 Loan").

12.      In addition, prior to execution of the Mortgage, on September 20, 2006, VALLEJO and S. Tomadin executed a Home Equity Line of Credit (the "HELOC") in a maximum amount of $350,000.00, which was recorded on November 8, 2006 in Official Records Book 43086, Page 957 of the Public Records of Broward County, Florida").

13.      Upon closing on the Subject Loan on June 22, 2007, the $200,000.00 Loan was satisfied, resulting in a Release of Mortgage being recorded on July 5, 2007 in Official Records Book 44284, Page 460, of the Public Records of Broward County, Florida.

14.    As a result of the closing on the Subject Loan, the HELOC moved to first lien priority on the Subject Property, and the Subject Loan moved into second lien priority behind the HELOC.

15.    After the closing on the Subject Loan, VALLEJO continued to utilize the funds available from the HELOC and remitted monthly payments on the HELOC.

16.    On or about February 25, 2009, VALLEJO and his former spouse, S. Tomadin, filed for Chapter 13 Bankruptcy protection in the United States Bankruptcy Court for the Southern District of Florida, Case Number 09-13228-RBR (the "Bankruptcy Action").

17.    On or about March 19, 2009, Bank of America, as servicing agent for BAFC, filed a Statement of Claim in the Bankruptcy Action claiming that the Subject Loan in the amount of $540,084.06 was a secured claim on the Subject Property ("Claim 5-1") which was predicated on the same Promissory Note and Mortgage.

18.    Then, on or about March 23, 2009, Bank of America, N.A. filed a Proof of Claim in the Bankruptcy Action claiming that the HELOC in the amount of $335,846.85 was a secured claim on the Property ("Claim 6-1").

19.    During the course of the Bankruptcy Action, on April 28, 2009, VALLEJO filed a Motion to Avoid Lien with Bank of America regarding Claim 5-1 a/k/a the Subject Loan, as the Subject Loan was a second lien on the Subject Property, and a Motion to Value Collateral with Homestead Real Property (the "Motion to Avoid Lien and Value Collateral").

20.    On April 29, 2009, VALLEJO filed an Appraisal of Real Property and an Objection to Claim of Bank of America – Claim 5-1 in the Bankruptcy Action.

21.     The Objection to Claim notes that the principal balance of the loan with Bank of America was approximately $540,084.06.

22.     The record in the Bankruptcy Action is devoid of any evidence that Bank of America objected to or opposed the relief requested in the Motion to Avoid Lien and Value Collateral, despite receiving notice of hearing and opportunity to be heard regarding same, and the record contains no formal written objection by Bank of America to the relief requested in the Motion to Avoid Lien and Value Collateral.

23.     On or about May 20, 2009, the Honorable Judge Raymond B. Ray entered an Order Granting Debtors Motion to Value Property to Avoid Mortgage Held by Bank of America Pursuant to 11 U.S.C. § 506 (the "Cramdown Order"). The Cramdown Order deemed the mortgage null and void and satisfied in full.

24.     Simultaneously therewith, the Honorable Judge Raymond B. Ray also entered an Order Sustaining Debtor's Objection to Claim (#5-1) of Bank of America, striking the claim predicated on the Promissory Note.

25.     Pursuant to the Cramdown Order, the Mortgage was determined to be unsecured, and further ordered that "[t]he mortgage lien of Bank of America is deemed null and void and no longer a lien against the property. The second Mortgage of Bank of America in the amount of $539,834.00 recorded in Book 44273 page 741 of the public records of Broward County, Florida is avoided and stripped as wholly unsecured and the mortgage shall be deemed satisfied."

26.     A copy of the Cramdown Order was subsequently recorded in the Public Records of Broward County, Florida on January 1, 2014 at Book Number 50515, Page 1390.

27.     Following entry of the Cramdown Order and Order Sustaining Debtor's Objection to Claim (#5-1), Bank of America purportedly assigned the subject loan to a securitized trust, U.S. BANK, on July 27, 2011, more than two years after the Cramdown Order and Order Sustaining Debtor's Objection to Claim were entered in the Bankruptcy Action.  The assignment of the NOTE and MORTGAGE from Bank of America to U.S. BANK was executed on July 27, 2011 and then recorded on August 19, 2011 in Official Records Book 48125, Page 682 of the Public Records of Broward County.

28.     On November 17, 2011, U.S. BANK filed a Mortgage Foreclosure Complaint (the "2011 Foreclosure Complaint") against VALLEJO regarding the Subject Loan in the case styled *U.S. BANK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007 v. ANTONIO VALLEJO, et al.*, Case Number CACE 11-028455 in the Seventeenth Judicial Circuit in and for Broward County, Florida (the "2011 Foreclosure Action").

29.     The verification contained within U.S. BANK's 2011 Foreclosure Complaint clearly and unequivocally reflected that based on U.S. BANK's own allegations, Bank of America was the servicer of the loan as of the date of filing the 2011 Foreclosure Complaint.

30.     On December 12, 2011, counsel for VALLEJO in the 2011 Foreclosure Action served a Motion to Dismiss for Failure to State a Cause of Action and a Motion for Sanctions Pursuant to §57.105, *Florida Statutes* along with a Safe Harbor Letter on U.S. BANK's counsel in the 2011 Foreclosure Action identifying the Cramdown Order and the

Order Sustaining Objection as the basis for the Motion to Dismiss and Motion for Sanctions.

31.     Four days later, on December 16, 2011, U.S. BANK filed a voluntary dismissal of the 2011 Foreclosure Action.

32.     Simultaneously therewith, U.S. BANK filed a Response to the Motion to Dismiss acknowledging the legal effect of the Cramdown Order and the Order Sustaining Objection and noting the simultaneous dismissal of the 2011 Foreclosure Action based upon the Bankruptcy Orders.

33.     On January 31, 2014, Specialized Loan Servicing, LLC, on behalf of US BANK filed a **second** Proof of Claim on the Subject Loan claiming that it was a secured debt ("Claim 19").

34.     On March 24, 2014, VALLEJO was discharged as a debtor in the Bankruptcy Action after completing the Chapter 13 Plan (the "Discharge Order").  The Discharge Order prohibited a creditor from any contact with the debtor and prohibited the filing of any lawsuit.

35.     On April 14, 2014, NATIONSTAR sent a Hello/Goodbye Letter acknowledging that it began servicing the Subject Loan effective April 1, 2014.

36.     Subsequently, the Trustee in the Bankruptcy Action objected to Claim 19 as being time barred, and said objection was sustained by Judge Raymond B. Ray in the Bankruptcy Action on October 28, 2014.

37.     On or about May 11, 2017, U.S. BANK through its mortgage servicing agent, NATIONSTAR filed another wrongful foreclosure against VALLEJO.

38.     The 2017 Foreclosure Complaint asserted a default of July 1, 2012 despite the Cramdown Order entered May 20, 2009 which stripped the Mortgage from the Subject Property, and the Discharge Order entered on March 24, 2014 which fully discharged the debt owed under the Promissory Note in violation of federal bankruptcy law.

39.     The 2017 Foreclosure Complaint was filed by U.S. BANK, and was verified under oath by NATIONSTAR as attorney-in-fact for U.S. Bank National Association as Trustee for Banc of America Funding Corporation Mortgage Pass-Through Certificates Series 2007-7.

40.     The 2017 Foreclosure Complaint, verified by NATIONSTAR on behalf of U.S. BANK, asserted under oath that "Plaintiff declares the full amount payable under the Note and Mortgage to be due, except to the extent any part of that amount is or would be subject to a viable statute of limitations defense." 2017 Foreclosure Complaint ¶6.

41.     The Wherefore clause of the 2017 Foreclosure Complaint requests as relief: "Plaintiff demands judgment foreclosing the mortgage, for costs (and when applicable, attorneys' fees), and if the proceeds of the sale are insufficient to pay Plaintiff's judgment, Plaintiff asks the Court to reserve jurisdiction to determine whether a deficiency is appropriate."

42.     Moreover, the 2017 Foreclosure Complaint specifically fails to allege that it is seeking only *in rem* relief against the Subject Property.

43.     In addition, *in rem* relief could not be sought against the Subject Property as the Mortgage securing the Promissory Note as a debt obligation against the Subject Property no longer existed of record pursuant to the Cramdown Order and rendered any debt instrument related thereto unsecured as a matter of law.

44.     On or about July 31, 2017, VALLEJO was dropped as a party to the 2017 Foreclosure Action prior to filing a response to the 2017 Foreclosure Complaint.

45.     On or about July 31, 2017, S. Tomadin, VALLEJO's ex-wife, filed her Answer, Affirmative Defenses, and Counterclaim/Third-Party Complaint in the 2017 Foreclosure Action.

46.     In her Answer and Affirmative Defenses, S. Tomadin specifically denied the allegations pertaining to the alleged default on the Promissory Note and Mortgage (2017 Foreclosure Complaint ¶ 5), denied the allegations that the full amount under the Note and Mortgage was due and payable (2017 Foreclosure Complaint ¶ 6), and denied the allegation that she and VALLEJO owed $539,834.06 in principal on the Note and Mortgage (2017 Foreclosure Complaint ¶ 7).

47.     As part of her Affirmative Defenses, S. Tomadin asserted Satisfaction and Discharge by virtue of the Cramdown Order and subsequent Discharge Order (First Affirmative Defense).  S. Tomadin also asserted a Counterclaim against U.S. BANK and a Third-Party Complaint against NATIONSTAR for claims under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq., and the Florida Unfair and Deceptive Trade Practices Act, §§ 501.201 et seq, *Florida Statutes* (the "Counterclaim").

48.     On or about September 22, 2017, U.S. BANK filed its Answer and Affirmative Defenses to the Counterclaim in the 2017 Foreclosure Action filed by S. Tomadin.  In its Answer and Affirmative Defenses, U.S. BANK denied the allegations in S. Tomadin's Counterclaim pertaining to the discharge in bankruptcy of the Subject Loan, including the allegations that the Subject Mortgage was a second mortgage on the Property (Answer to Counterclaim ¶ 60), denied the allegations that Bank of America filed a claim

in S. Tomadin's bankruptcy pertaining to the same Promissory Note and Mortgage (Answer to Counterclaim ¶ 62), denied the allegations that the bankruptcy court entered the Cram-Down Order (Answer to Counterclaim ¶ 63), denied the allegations that the bankruptcy court entered an order sustaining an objection to Bank of America's claim (Answer to Counterclaim ¶ 64), denied the allegations that the Mortgage was stripped from the Property pursuant to the Cramdown Order (Answer to Counterclaim ¶ 65), denied the allegations that the Cram-Down Order was recorded in the Public Records at Book 50515, Page 1390 (Answer to Counterclaim ¶ 66), denied the allegations that S. Tomadin received a full discharge after completion of her Chapter 13 bankruptcy (Answer to Counterclaim ¶ 67), denied the allegations that the Discharge Order precludes any further attempt to collect on the Promissory Note and Mortgage (Answer to Counterclaim ¶ 68), and denied the allegations that U.S. BANK, through its servicing agent NATIONSTAR MORTGAGE, LLC, filed the 2017 Foreclosure Action against S. Tomadin and VALLEJO despite the Cramdown Order (Answer to Counterclaim ¶ 69).

49.     U.S. BANK also asserted a plethora of Affirmative Defenses to the Counterclaim, including Bad Faith/Unclean Hands (Affirmative Defense 1), Laches (Affirmative Defense 2), Estoppel (Affirmative Defense 3), Waiver and/or Release (Affirmative Defense 4), No Vicarious Liability (Affirmative Defense 5), No Derivative Liability (Affirmative Defense 6), No Injury or Damages (Affirmative Defense 7), Compliance with Law (Affirmative Defense 8), Lack of Conditions Precedent (Affirmative Defense 9), Failure to State an FDCPA Claim (Affirmative Defense 12), Bad Faith (Affirmative Defense 13), No Intentional or Knowing Violation (Affirmative Defense 14), Bona Fide Error Defense (Affirmative Defense 15), Statute of Limitations (Affirmative

11

Defense 16), In pari delicto (Affirmative Defense 17), No Actual Knowledge of Illegitimacy of Debt (Affirmative Defense 18), Bankruptcy Code preemption of FDCPA claims (Affirmative Defense 19), No Attempt to Collect (Affirmative Defense 20), No Activity within scope of FDUTPA (Affirmative Defense 21), Failure to Allege Recoverable Damages (Affirmative Defense 22), No Violation (Affirmative Defense 23), No Willful Conduct (Affirmative Defense 24), No Damages (Affirmative Defense 25), Litigation Privilege (Affirmative Defense 26), and Bankruptcy Code preemption of FDUPTA Claim (Affirmative Defense 27).

50.    On or about September 22, 2017, NATIONSTAR filed its Answer and Affirmative Defenses to the Third-Party Complaint filed by S. Tomadin, which contained the same denials and Affirmative Defenses contained in U.S. BANK's Answer and Affirmative Defenses to the Counterclaim.

51.    After filing their Answers and Affirmative Defenses to the Counterclaim/Third-Party Complaint brought by S. Tomadin, NATIONSTAR and U.S. BANK, continued to attempt collection efforts against VALLEJO, and continued to report negative reporting information to VALLEJO's credit report, including the foreclosure status of the Subject Loan.

52.    After filing their Answers and Affirmative Defenses to the Counterclaim, NATIONSTAR and U.S. BANK, through their counsel in the 2017 Foreclosure Action, attempted to continue to proceed with the state court foreclosure proceedings despite their notice of the Cramdown Order and Discharge Order, asserting that the $350,000.00 HELOC had been paid off with the loan proceeds from the Subject Loan, that the HELOC was supposed to have been satisfied at closing, and that the Subject Loan had been in first

lien position during the bankruptcy proceedings and should not have been stripped from the Subject Property.

53.     In response, S. Tomadin's counsel provided documentary evidence that the HELOC had been paid down from funds at closing, but that the HELOC had not been closed and had accumulated a new balance of $335,846.85 prior to the filing of VALLEJO and S. Tomadin's bankruptcy while it continued to maintain first lien priority.

54.     Following production of the documentary evidence from S. Tomadin's counsel, U.S. BANK and NATIONSTAR decided to take a new position in the 2017 Foreclosure Action, namely that the Mortgage was supposed to have been given first lien position to the $350,000.00 HELOC at closing through a subordination agreement.

55.     However, U.S. BANK and NATIONSTAR were unable to produce a subordination agreement reflecting an agreement between the lenders to subordinate the HELOC to the Mortgage.

56.     On or about October 2, 2017, NATIONSTAR filed a Motion to Reopen in the Bankruptcy Action seeking to re-open the Bankruptcy Action, alleging that the basis for the Motion to Reopen was "the Debtors' misrepresentation of this Court that Nationstar's mortgage securing a $540,000 loan … was subordinate to a mortgage securing the Debtors' $350,000.00 home equity line of credit."

57.     NATIONSTAR further asserted in the Motion to Reopen that the Debtors agreed to subordinate the Mortgage to their HELOC so that NATIONSTAR's loan would be in first lien priority.

58.     Notably, NATIONSTAR's allegations in the Motion to Reopen that it is the "successor in interest to Bank of America" and is "the secured creditor" of VALLEJO and

S. Tomadin in the Bankruptcy Action is wholly inconsistent with its position in the 2017 Foreclosure Action that NATIONSTAR is the servicing agent for U.S. BANK.

59.     In the Motion to Reopen, filed more than eight and a half years after entry of the initial Cramdown Order was entered, NATIONSTAR sought to vacate the Cramdown Order.

60.     Moreover, despite its allegations in the Motion to Reopen that the Mortgage was in first lien priority, it produced no documentation that a subordination agreement was ever entered into which altered the lien priority of the Mortgage and the HELOC.

61.     On or about October 24, 2017, S. Tomadin filed a Response in Opposition to the Motion to Reopen asserting that there was no misrepresentation made to the Bankruptcy Court because NATIONSTAR had not provided a written subordination agreement reflecting that subordination of the HELOC had ever occurred, and further asserting that the relief sought by NATIONSTAR, even if legally accurate, should be barred by laches as the original creditor on the Subject Loan, Bank of America, was provided notice and opportunity to object to the Cramdown Order and Order Sustaining Objection to Claim (#5-1) in May 2009 and failed to object of otherwise assert any argument regarding the priority of the Subject Loan and the HELOC.

62.     On or about October 9, 2017, S. Tomadin's counsel served a Motion for Sanctions and Safe Harbor Letter pursuant to § 57.105 upon U.S. BANK, NATIONSTAR, and their counsel in the 2017 Foreclosure Action for continuing to pursue the 2017 Foreclosure Complaint.

63.     On or about October 27, 2017 (the last day of the Safe Harbor period), U.S. BANK and NATIONSTAR filed a Motion to Dismiss Foreclosure Complaint seeking to voluntarily dismiss the 2017 Foreclosure Complaint.

64.     On or about November 2, 2017, the Motion to Reopen was heard by the Honorable Judge Raymond B. Ray in the Bankruptcy Action.

65.     On or about December 21, 2017, Judge Raymond B. Ray entered an Order Denying Motion to Reopen.

66.     The Order Denying Motion to Reopen specifically stated as the basis for the denial that NATIONSTAR did not produce a written subordination agreement, and that "[w]ithout an express Subordination Agreement to support Nationstar's bare allegations, the Court cannot find cause to reopen the bankruptcy case."

67.     As second grounds for denying the Motion to Reopen, the Order Denying Motion to Reopen stated that laches would preclude the relief requested even if cause existed to reopen the bankruptcy given the "unreasonable and inexcusable" eight-year delay which was unexplained in the Motion to Reopen, as well as the extensive opportunities of the original creditor, Bank of America, to object to the Cramdown Order and Order Sustaining Objection to Claim (#5-1) during the bankruptcy proceedings before the Discharge Order was entered. Moreover, the Court found that VALLEJO and Susana Tomadin would be unduly prejudiced by granting the relief requested by NATIONSTAR.

68.     Following those proceedings, NATIONSTAR continued collection efforts on the debt pertaining to the Subject Loan, continued to enforce the extinguished security interest, and continued negatively reporting the Subject Loan on VALLEJO's credit reports, causing VALLEJO damages.

## FACTS

69.     On or about June 22, 2007, the Plaintiff, ANTONIO VALLEJO, along with his former spouse, Susana Tomadin ("S. Tomadin"), executed and delivered a Promissory Note (the "Promissory Note") in the amount of $540,000.00, and a Mortgage (the "Mortgage") in favor of Bank of America, N.A. (the Promissory Note and Mortgage are collectively referred to as the "Subject Loan") encumbering the real property located at 1263 Skylark Drive, Weston, Florida 33327 (the "Subject Property"). *A copy of the Promissory Note and Mortgage are attached hereto as Exhibits A and B, respectively.*

70.     On or about May 20, 2009, the Honorable Judge Raymond B. Ray entered an Order Granting Debtors Motion to Value Property to Avoid Mortgage Held by Bank of America Pursuant to 11 U.S.C. § 506 (the "Cramdown Order").  The Cramdown Order deemed the mortgage null and void and satisfied in full.  *A copy of the Cramdown Order is attached hereto as Exhibit C.*

71.     The Cramdown Order states:

> "The mortgage lien of Bank of America is deemed *null and void* and no longer a lien against the property.  The second Mortgage of Bank of America in the amount of $539,834.00 recorded in Book 44273 page 741 of the public records of Broward County, Florida is avoided and stripped as wholly unsecured and the *mortgage shall be deemed satisfied*."

Ex. C (emphasis added).

72.     On July 27, 2011, an assignment of the NOTE and satisfied MORTGAGE from Bank of America to U.S. BANK was executed and recorded on August 19, 2011 in Official Records Book 48125, Page 682 of the Public Records of Broward County. *A copy of the Assignment is attached hereto as Exhibit D.*

16

73.     On March 24, 2014, VALLEJO was discharged as a debtor in the Bankruptcy Action after completing the Chapter 13 Plan (the "Discharge Order").  *A copy of the Discharge Order is attached hereto as Exhibit E.*

74.     The Discharge Order states:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor. *[In a case involving community property:* There are also special rules that protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.] *A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.*
> *However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.*

Ex. E (emphasis added).

75.     Following entry of the Cramdown Order, and the Discharge Order, U.S. BANK and NATIONSTAR continued collection efforts on the debt pertaining to the Subject Loan, continued to enforce the extinguished security interest, and continued negatively reporting the Subject Loan on VALLEJO's credit reports, causing VALLEJO damages, most particularly during years that are relevant to VALLEJO'S causes of action, as follows.

76.     By mail dated September 4, 2014 to August 18, 2015, NATIONSTAR sent letters, notices, forms, documents, and papers to VALLEJO.  *See Composite Mailings attached as Exhibit F.*

77.     By mail dated September 4, 2014, NATIONSTAR sent a letter which, among other things, states: "Your mortgage loan has been referred for foreclosure."

78.     By mail dated September 19, 2014, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

79.     By mail dated October 20, 2014, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

80.     By mail dated November 18, 2014, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

81.     By mail dated December 24, 2014, NATIONSTAR sent a letter, which among other things, states: "Failure to bring your loan current may result in fees, possibly even foreclosure . . ."

82.     NATIONSTAR also issued and mailed VALLEJO a 2014 Annual Tax And Interest Statement (Form 1098).

82.     By mail dated January 21, 2015, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including

but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

83.   By mail dated February 18, 2015, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

84.   By mail dated March 18, 2015, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

85.   By mail dated April 20, 2015, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO, which among other things, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

86.   By mail dated April 25, 2015, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Your loan agreement requires that adequate insurance be maintained."

87.   By mail dated May 19, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states:

"Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

88.     By mail dated May 19, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

89.     By mail dated June 18, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

90.     By mail dated July 20, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

91.     By mail dated August 18, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

92.      By mail dated September 18, 2015 to August 19, 2016, NATIONSTAR sent letters, notices, forms, documents, and papers to VALLEJO.  ***See Composite Mailings attached as Exhibit G.***

93.     By mail dated September 18, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states:

"Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

94.     By mail dated October 21, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

95.     By mail dated November 18, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which includes various charges and expenses, and states: Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

96.     By mail dated December 18, 2015, NATIONSTAR sent VALLEJO an Informational Statement, which include various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

97.     By mail dated December 31, 2015, NATIONSTAR sent a flood insurance notice to VALLEJO, which states:  "NATIONSTAR MORTGAGE LLC will require that you maintain valid FLOOD insurance."

98.     NATIONSTAR also issued and mailed to VALLEJO a 2015 Annual Tax And Interest Statement (Form 1098).

99.     By mail dated January 20, 2016, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, included various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including

but not limited to foreclosure of its lien, only against the property securing the original obligation."

100.     By mail dated February 18, 2016, NATIONSTAR sent an "Informational Statement" to VALLEJO, which, among other information, included various charges and expenses, and states:  "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien, only against the property securing the original obligation."

101.     By mail dated February 21, 2016, NATIONSTAR sent an Notice Of Renewal Of Flood Insurance to VALLEJO, which states, among other things: "The annual premium for this coverage is $2,152.75, which has been advanced on your behalf."

102.     By mail dated March 18, 2016, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states:  "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

103.     By letter dated March 25, 2016, NATIONSTAR sent a Home Affordable Mortgage Program ("HAMP") letter to VALLEJO referencing "your client" and offering to "work with you and your client in an effort to make their mortgage payment affordable."

104.     By mail dated April 13, 2016, NATIONSTAR sent a Home Affordable Mortgage Program ("HAMP") letter to VALLEJO referencing "your client" and offering to "work with you and your client in an effort to make their mortgage payment affordable."

105.     By mail dated April 19, 2016, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and

expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

106.    By mail dated May 18, 2016, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

107.    By mail dated May 19, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states: "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

108.    By mail dated June 20, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

109.    By mail dated June 27, 2016, NATIONSTAR sent an Annual Escrow Account Disclosure Statement.

110.    By mail dated June 30, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states: "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

111.    By mail dated July 19, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and

expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

112.    By mail dated July 20, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

113.    By mail dated August 12, 2016, NATIONSTAR sent a letter and forms to complete, to VALLEJO referencing "your client" regarding HAMP.

114.    By mail dated August 18, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

115.    By mail dated August 19, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

116.    By mail dated August 31, 2016 to August 18, 2017, NATIONSTAR sent letters, notices, forms, documents, and papers to VALLEJO.  ***See Composite Mailings attached as Exhibit H.***

117.    By mail dated August 31, 2016, NATIONSTAR sent a letter and forms to complete, to VALLEJO referencing "your client" regarding HAMP.

118.    By mail dated September 20, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and

expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

119.    By mail dated September 21, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

120.    By mail dated October 18, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

121.    By mail dated October 19, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

122.    By mail dated November 18, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

123.    By mail dated November 19, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

124.     By mail dated December 20, 2016 NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

125.     By mail dated December 21, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

126.     By mail dated December 28, 2016, NATIONSTAR sent an Annual Escrow Account Disclosure Statement to VALLEJO.

127.     By mail dated December 29, 2016, NATIONSTAR sent a Notice Of Flood Insurance Expiration to VALLEJO, which, among other things, states:    "This policy/certificate was obtained by NATIONSTAR MORTGAGE LLC to protect our interest in your property."

128.     NATIONSTAR also issued and mailed to VALLEJO a 2015 Annual Tax And Interest Statement (Form 1098).

129.     By mail dated January 18, 2017, NATIONSTAR sent a Notice Of Flood Insurance Expiration to VALLEJO, which, among other things, states:    "This policy/certificate was obtained by NATIONSTAR MORTGAGE LLC to protect our interest in your property."

130.     By mail dated January 19, 2016, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

131.    By mail dated January 26, 2017, NATIONSTAR sent a Notice Of Intent to foreclose to VALLEJO.

132.    By mail dated February 17, 2017, NATIONSTAR sent a Flood Insurance (rezoning) letter to VALLEJO.

133.    By mail dated February 21, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses, and states: "Nationstar reserves the right to exercise its legal rights, including but not limited to foreclosure of its lien interest, only against the property securing the original obligation."

134.    By mail dated February 22, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

135.    By mail dated February 25, 2017, NATIONSTAR sent a flood insurance letter to VALLEJO.

136.    By mail dated March 20, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

137.    By mail dated March 21, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

138.    By mail dated April 18, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

139.     By mail dated April 19, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

140.     On or about May 11, 2017, U.S. BANK through its mortgage servicing agent, NATIONSTAR filed another wrongful foreclosure complaint (the "2017 Foreclosure Complaint") against VALLEJO regarding the Subject Loan in the case styled *U.S. BANK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA FUNDING CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007 v. ANTONIO VALLEJO, et al.*, Case Number CACE 17-008985 in the Seventeenth Judicial Circuit in and for Broward County, Florida (the "2017 Foreclosure Action").[1]

141.     By mail dated May 18, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

142.     By mail dated May 19, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

143.     By mail dated May 23, 2017, NATIONSTAR sent a letter to VALLEJO introducing its new brand name (Mr. Cooper).

144.     On or about June 1, 2017, VALLEJO was served with a Summons and the Verified Complaint in the 2017 Foreclosure Action.

---

[1] The court may take judicial notice of the 2017 public foreclosure action.  *Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197 (11th Cir. 2004).

145.   By mail dated June 20, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

146.   By mail dated June 21, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

147.   By mail dated July 18, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

148.   By mail dated July 19, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

149.   By mail dated August 18, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

150.   By mail dated August 18, 2017, NATIONSTAR sent a letter to VALLEJO, which among other things, states:  "Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home."

151. By mail dated September 19, 2017 to August 20, 2018, NATIONSTAR sent letters, notices, forms, documents, and papers to VALLEJO.  *See Composite Mailings attached as Exhibit I.*

152.    By mail dated September 19, 2017, NATIONSTAR (d/b/a Mr. Cooper)[2] sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

153.    By mail dated September 19, 2017, NATIONSTAR sent a notice of delinquency to VALLEJO, which, among other information, includes various charges and expenses.

154.    By mail dated October 18, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

155.    By mail dated October 18, 2017, NATIONSTAR sent a notice of delinquency to VALLEJO, which, among other information, includes various charges and expenses.

156.    By mail dated November 20, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

157.    By mail dated November 20, 2017, NATIONSTAR sent a notice of delinquency to VALLEJO.

158.    By mail dated December 18, 2017, NATIONSTAR sent VALLEJO an Annual Escrow Account Disclosure Statement.

159.    By mail dated December 19, 2017, NATIONSTAR sent a notice of delinquency to VALLEJO.

---

[2] NATIONSTAR (d/b/a Mr. Cooper) shall hereinafter be referred to as "NATIONSTAR."

160.     By mail dated December 19, 2017, NATIONSTAR sent an Informational Statement to VALLEJO, which, among other information, includes various charges and expenses.

161.     NATIONSTAR also issued and mailed to VALLEJO a 2015 Annual Tax And Interest Statement (Form 1098).

162.     By mail dated January 18, 2018, NATIONSTAR sent an Informational Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

163.     By mail dated January 18, 2018, NATIONSTAR sent a notice of delinquency and foreclosure to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

164.     By mail dated February 20, 2018, NATIONSTAR sent an Informational Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

165.     By mail dated February 20, 2018, NATIONSTAR sent a notice of delinquency and foreclosure to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

166.     By mail dated March 20, 2018 NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

167.     By  mail dated March 20, 2018, NATIONSTAR sent VALLEJO a notice of delinquency.

168.   By mail dated April 18, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

169.   By  mail dated April 18, 2018, NATIONSTAR sent VALLEJO (c/o Oppenheim Pilelsky P.A.) a notice of delinquency.

170.   By letter dated April 23, 2018, NATIONSTAR sent VALLEJO (c/o Oppenheim Pilelsky P.A.) a letter pursuant to Real Estate Settlement Procedures Act (RESPA).

171.   By mail dated May 16, 2018, NATIONSTAR sent an Annual Escrow Account Disclosure Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.).

172.   By mail dated May 18, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

173.   By mail dated May 18, 2018, NATIONSTAR sent a notice of delinquency and foreclosure to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

174.   By mail dated June 19, 2018, NATIONSTAR sent a "Mortgage Loan Statement" to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

175.   By mail dated June 19, 2018 NATIONSTAR sent a notice of delinquency and foreclosure to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

176.   By mail dated July 18, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

177.   By mail dated July 18, 2018, NATIONSTAR sent a notice of delinquency to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

178.   By mail dated August 1, 2018 NATIONSTAR sent a property insurance notice to VALLEJO (c/o Oppenheim Pilelsky P.A.).

179.   By mail dated August 20, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

180.   By mail dated August 20, 2018, NATIONSTAR sent a notice of delinquency to VALLEJO (c/o Oppenheim Pilelsky P.A.).

181.   By mail dated August 24, 2018 to November 20, 2018, NATIONSTAR sent letters, notices, forms, documents, and papers to VALLEJO. ***See Composite Mailings attached as Exhibit J.***

182.   By mail dated August 24, 2018, NATIONSTAR sent an Escrow Review Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

183.   By mail dated September 3, 2018 NATIONSTAR sent a property insurance notice to VALLEJO (c/o Oppenheim Pilelsky P.A.).

184.   By mail dated September 6, 2018 NATIONSTAR sent a loss mitigation notice to VALLEJO (c/o Oppenheim Pilelsky P.A.).

185.    By mail dated September 7, 2018 NATIONSTAR sent a loan counseling notice to VALLEJO (c/o Oppenheim Pilelsky P.A.).

186.    By mail dated September 18, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

187.    By mail dated October 18, 2018, NATIONSTAR sent a Mortgage Loan Statement to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

188.    By mail dated October 18, 2018, NATIONSTAR sent a notice of delinquency to VALLEJO (c/o Oppenheim Pilelsky P.A.), which, among other information, included various charges and expenses.

189.    By mail dated November 20, 2018, NATIONSTAR sent a letter under the Soldier's And Sailors Civil Relief Act (SCRA) to VALLEJO which stated, among other things:  "Our records tell us that one or more payment(s) on your Mr. Cooper home loan is overdue."

## COUNT I – VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. §§ 1692 ET SEQ. – (NATIONSTAR)

190.    Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 75, and 151 through 189 as if fully set forth herein.

191.    This is an action founded on NATIONSTAR's violation of the 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act ("FDCPA").

192.    NATIONSTAR is a debt collector as defined by 15 U.S.C. § 1692a (6) as NATIONSTAR "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

193.    NATIONSTAR does not fit into the exception to the FDCPA for mortgage servicing companies in 15 U.S.C. § 1692a(6)(F) as NATIONSTAR, by its own admission and by admission of U.S. BANK as its principal, acquired its mortgage servicing rights to the Subject Loan after the Subject Loan was in default under the terms of the Promissory Note and Mortgage, and after it had subsequently been discharged in the Bankruptcy Action.

194.    NATIONSTAR does not fit into the exception to the FDCPA for mortgage servicing companies in 15 U.S.C. § 1692a(6)(F) because U.S. BANK, as its principal, alleged in its 2011 Foreclosure Complaint that the Subject Loan was in default for the payment due March 1, 2009 and all subsequent payments.

195.    NATIONSTAR does not fit into the exception to the FDCPA for mortgage servicing companies in 15 U.S.C. § 1692a(6)(F) because U.S. BANK, as its principal, attached as an exhibit to the 2011 Foreclosure Complaint an Assignment of Mortgage reflecting that the ownership of the Mortgage "together with all the indebtedness currently due and payable to become due under the terms of the promissory note or evidence of indebtedness secured thereby" was transferred to U.S. BANK on July 27, 2011, more than two years after the default under the Subject Loan occurred.

196.    NATIONSTAR does not fit into the exception to the FDCPA for mortgage servicing companies in 15 U.S.C. § 1692a(6)(F) because NATIONSTAR sent a

Hello/Goodbye Letter dated April 14, 2014 acknowledging that it began servicing the Subject Loan effective April 1, 2014. *A copy of the letter is attached as Exhibit K.*

197.    At all times material, NATIONSTAR was acting as agent, for its principal, U.S. BANK.

198.    NATIONSTAR violated 15 U.S.C. § 1692 et. Seq. because, commencing on September 19, 2017, and continuing to the present, NATIONSTAR misrepresented the legal status of the debt by mailing letters, notices, statements, and documents to VALLEJO that it was entitled to collection of the debt via the Promissory Note, and via enforcement of the Mortgage *in rem* against the Subject Property, notwithstanding its knowledge the Mortgage was stripped and deemed unsecured, and the debt on the Promissory Note was discharged in the Bankruptcy Action.

199.    There was no basis in law or in equity for enforcement of the Promissory Note or Mortgage, and the mailing of letters, notices, statements, and documents to VALLEJO constituted violations of 15 U.S.C. § 1692.

200.    NATIONSTAR'S letters, notices, statements, and documents are "communications" as defined by 15 U.S.C. § 1692a(2).

201.    NATIONSTAR violated 15 U.S.C. § 1692e(2)(A) by making false representations regarding the character, amount, or legal status of the debt allegedly owed by VALLEJO.

202.    NATIONSTAR violated 15 U.S.C. § 1692e(2)(B) by making false representations regarding any services rendered or compensation which may be lawfully received by NATIONSTAR for the collection of a debt.

203.    NATIONSTAR violated 15 U.S.C. § 1692e(4) by making false representations and / or implying that non-payment of a debt will result in the sale of any of his property and/or garnishment and / or attachment of his wages.

204.    NATIONSTAR violated 15 U.S.C. § 1692e(5) by threatening to take any action that cannot be legally taken.

205.    NATIONSTAR violated 15 U.S.C. § 1692e(10) by using false representations and deceptive means to collect or attempt to collect any debt.

206.    NATIONSTAR violated 15 U.S.C. § 1692e (10) because it has continued to misrepresent that the debt is secured against the Subject Property.

207.    NATIONSTAR sent Informational Statements containing such misrepresentation regarding the legal status of the debt, including its secured nature, each month thereafter from September 19, 2017 through the present.

208.    NATIONSTAR also sent Flood Insurance notices misrepresenting the secured status of the debt.

209.    NATIONSTAR sent a demand letter to VALLEJO asserting that the notice was "being sent as required by the terms of the security instrument securing your mortgage loan," and further stated "failure to pay … may result in acceleration of sums secured by the Security Instrument, foreclosure proceedings and sale of the property."

210.    NATIONSTAR'S letters expressed intention to pursue collection against the Subject Property despite the unsecured nature of the debt which constituted a misrepresentation regarding the legal status of the debt.

211.    NATIONSTAR further misrepresented the legal status or nature of the debt in notices sent to VALLEJO which stated that "Your loan is currently in the Foreclosure

process," thereby misstating the secured nature of the debt that was in fact no longer secured.

212.    NATIONSTAR'S letters, notices, statements, and documents included alleged debts for legal fees, lender charges, property inspections, taxes, and insurance, among other alleged debts which it knew VALLEJO did not owe.

213.    NATIONSTAR'S letters, notices, statements, and documents included threats of foreclosure which legal action it knew it was not entitled to.

214.    NATIONSTAR'S letters, notices, statements, and documents were frequent, and persistent over several years.

215.    Pursuant to 15 U.S.C. § 1692k, VALLEJO is entitled to recover actual damages plus $1,000.00 per offense in statutory damages against NATIONSTAR for failure to comply with 15 U.S.C. § 1692e.

WHEREFORE, Plaintiff, VALLEJO, respectfully requests that the Court:

(a)    Enter a judgment upon each violation in favor of ANTONIO VALLEJO and against Defendant, U.S. BANK, in such amount as proved at trial;

(b)    Enter judgment for punitive damages in favor of ANTONIO VALLEJO;

(c)    Enter judgment for total damages in favor of ANTONIO VALLEJO and against Defendant, U.S. BANK, in such amount as proved at trial;

(d)    Pursuant to 15 U.S.C. § 1692k, award ANTONIO VALLEJO his attorneys' fees, costs and other expenses against the Defendant, U.S. BANK; and

(e)    Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT II – VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692 ET SEQ. – (U.S. BANK)

216.    Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 75, and 151 through 189 as if fully set forth herein.

217.    This is an action founded on U.S. BANK's violation of the 15 U.S.C. § 1692 et seq., the Fair Debt Collection Practices Act ("FDCPA").

218.    U.S. BANK is a debt collector as defined by 15 U.S.C. § 1692a (6) as U.S. BANK "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts."

219.    U.S. BANK does not fit into the exception to the FDCPA for creditors collecting debts in their own name contained in 15 U.S.C. § 1692a(6)(F) because U.S. BANK, by its own admission, acquired its rights to the Subject Loan after the Subject Loan was in default under the terms of the Promissory Note and Mortgage, and after it had subsequently been discharged in the Bankruptcy Action.

220.    U.S. BANK does not fit into the exception to the FDCPA for creditors collecting debts in their own name contained in 15 U.S.C. § 1692a(6)(F) because U.S. BANK also attached as an exhibit to the 2011 Foreclosure Complaint an Assignment of Mortgage reflecting that the ownership of the Mortgage "together with all the indebtedness currently due and payable to become due under the terms of the promissory note or evidence of indebtedness secured thereby" was transferred to U.S. BANK on July 27, 2011, more than two years after the default under the Subject Loan occurred.

39

221.    At all times material, U.S. BANK was acting as the principal for its agent, NATIONSTAR.

222.    U.S. BANK is vicariously liable for the actions of its servicer, NATIONSTAR and any damages pertaining thereto as NATIONSTAR was acting on behalf of U.S. BANK as its attorney-in-fact and U.S. BANK exercised control over the actions of NATIONSTAR.

223.    U.S. BANK violated 15 U.S.C. § 1692 et. seq. because, commencing on September 19, 2017, and continuing to the present, NATIONSTAR misrepresented the legal status of the debt by mailing letters, notices, statements, and documents to VALLEJO via the threat of enforcement of the Mortgage *in rem* against the Subject Property, notwithstanding its knowledge the Mortgage was stripped and deemed unsecured, and the debt on the Promissory Note was discharged in the Bankruptcy Action.

224.    There was no basis in law or in equity for the threat of enforcement of the Promissory Note or Mortgage, and the mailing of letters, notices, statements and documents to VALLEJO constituted violations of 15 U.S.C. § 1692.

225.    NATIONSTAR'S letters, notices, statements, and documents are "communications" as defined by 15 U.S.C. § 1692a(2).

226.    U.S. BANK violated 15 U.S.C. § 1692e(2)(A) because its agent, NATIONSTAR made false representations regarding the character, amount, or legal status of the debt allegedly owed by VALLEJO.

227.    U.S. BANK violated 15 U.S.C. § 1692e(2)(B) because its agent, NATIONSTAR made false representations regarding any services rendered or compensation which may be lawfully received by U.S. BANK for the collection of a debt.

40

228.    U.S. BANK violated 15 U.S.C. § 1692e(4) because its agent, NATIONSTAR made false representations and / or implied that non-payment of a debt will result in the sale of any of his property and/or garnishment and / or attachment of his wages.

229.    U.S. BANK violated 15 U.S.C. § 1692e(5) because its agent, NATIONSTAR, threatened to take any action that cannot be legally taken.

230.    U.S. BANK violated 15 U.S.C. § 1692e(10) because its agent NATIONSTAR used false representations and deceptive means to collect or attempt to collect any debt.

231.    U.S. BANK'S agent, NATIONSTAR, sent Informational Statements containing such misrepresentation regarding the legal status of the debt, including its secured nature, each month thereafter from September 19, 2017 to the present.

232.    U.S. BANK'S agent, NATIONSTAR, sent Flood Insurance notices misrepresenting the secured status of the debt.

233.    U.S. BANK'S agent, NATIONSTAR, sent delinquency letters to VALLEJO, asserting rights of foreclosure and acceleration.

234.    The letters express an intention to pursue collection against the Subject Property despite the unsecured nature of the debt which constituted a misrepresentation regarding the legal status of the debt.

235.    U.S. BANK'S agent, NATIONSTAR, misrepresented the legal status or nature of the debt in notices sent to VALLEJO, which stated that "Your loan is currently in the Foreclosure process," thereby misstating the secured nature of the debt that was in fact no longer secured.

236.   NATIONSTAR'S letters, notices, statements and documents included alleged debts for legal fees, property inspections, taxes, and insurance, among other alleged debts which it knew VALLEJO did not owe.

237.   NATIONSTAR'S letters, notices, statements and documents included threats of foreclosure which legal action it knew it was not entitled to.

238.   The letters were frequent, and persistent over several years.

239.   Pursuant to 15 U.S.C. § 1692k, VALLEJO is entitled to recover actual damages plus $1,000.00 per offense in statutory damages violations by U.S. BANK for failure to comply with the provisions of 15 U.S.C. § 1692e.

WHEREFORE, Plaintiff, VALLEJO, respectfully requests that the Court:

(a)   Enter a judgment upon each violation in favor of ANTONIO VALLEJO and against Defendant, U.S. BANK, in such amount as proved at trial;

(b)   Enter judgment for punitive damages in favor of ANTONIO VALLEJO;

(c)   Enter judgment for total damages in favor of ANTONIO VALLEJO and against Defendant, U.S. BANK, in such amount as proved at trial;

(d)   Pursuant to 15 U.S.C. § 1692k, award ANTONIO VALLEJO his attorneys' fees, costs and other expenses against the Defendant, U.S. BANK; and

(e)   Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT III – VIOLATION OF THE FAIR CREDIT REPORTING ACT – (NATIONSTAR and U.S. BANK)

240.     Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, and 69 through 189 as if fully set forth herein.

241.     NATIONSTAR reported to credit reporting agencies or consumer reporting agencies that VALLEJO failed to timely remit payments under the Subject Loan after VALLEJO received a cram-down and discharge of the debt in bankruptcy, removing any further liability of VALLEJO on the Subject Loan.

242.     The report made by NATIONSTAR is false.

243.     The false information provided by NATIONSTAR to credit reporting agencies has defamed and slandered VALLEJO's credit, precluding him from obtaining credit or substantially increasing the cost of the credit he is able to obtain.

244.     NATIONSTAR is an "information furnisher" within the meaning of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (the "FCRA").

245.     NATIONSTAR violated the FCRA by providing inaccurate information to credit reporting agencies, and then failing to take reasonable steps to correct the inaccurate information after it knew or should have known of the violation.

246.     In fact, NATIONSTAR continued to report such information to VALLEJO's credit report after the filing of S. Tomadin's Counterclaim in the 2017 Foreclosure Action, after dismissal of the 2017 Foreclosure Complaint, and after denial of the Motion to Reopen in the Bankruptcy Action.

247.     Specifically, from February 2016 to present, NATIONSTAR reported the Subject Loan as delinquent to both Experian and TransUnion with the intention that such false information be reported on VALLEJO's credit reports with such credit reporting agencies, despite actual notice that the debt had been discharged in the Bankruptcy Action.

248.     Moreover, in February 2018, even after dismissal of the 2017 Foreclosure Complaint, NATIONSTAR reported to Experian and Transunion the following event for the Subject Loan "Foreclosure proceedings started," and further indicated that the status was "Foreclosure proceedings started.  $283,037 past due as of February 2018."

249.     Pursuant to 15 U.S.C. § 1681s-2(a), NATIONSTAR knew or had reasonable cause to believe that the information it furnished to various credit reporting agencies regarding VALLEJO was false, as NATIONSTAR was on notice of VALLEJO's Discharge Order and the Cramdown Order from the date it took over servicing of the Subject Loan.

250.     Pursuant to 15 U.S.C. § 1681s-2(a), NATIONSTAR continued reporting such false information pertaining to VALLEJO after VALLEJO notified NATIONSTAR that the information was inaccurate, and the information reported by NATIONSTAR was, in fact, inaccurate.

251.     VALLEJO repeatedly disputed the reporting of such information on his credit report to the applicable credit reporting agencies after NATIONSTAR submitted false and incorrect credit reporting information to such credit reporting agencies.

252.     In fact, both credit reports from Experian and Transunion reflect that the account is disputed by the consumer, establishing that NATIONSTAR was on notice of VALLEJO's dispute regarding such reporting information.

253.   NATIONSTAR received notice from the applicable credit reporting agencies of VALLEJO's dispute of such information, and continued to report such incorrect information despite such notice in violation of 15 U.S.C. § 1681s-2(b).

254.   NATIONSTAR's violation of the FCRA was willful or reckless, or occurred because NATIONSTAR failed to follow appropriate policies and procedures reasonably adapted to avoid the occurrence of such errors such that NATIONSTAR knew or should have known that its conduct violated the FCRA.

255.   Even after such time as NATIONSTAR asserts it learned of the stripping of the Mortgage and discharge of the Promissory Note in the Bankruptcy Action, NATIONSTAR continued to report the negative collection activity, including the alleged foreclosure status of the Subject Loan, to various credit reporting agencies, further exemplifying the intentional or willful and wanton disregard by NATIONSTAR of VALLEJO's rights.

256.   U.S. BANK is vicariously liable for the actions of NATIONSTAR and any damages pertaining thereto as NATIONSTAR was acting on behalf of U.S. BANK as its attorney in fact and U.S. BANK exercised control over the actions of NATIONSTAR as it pertained to credit reporting of the Subject Loan on VALLEJO's credit reports.

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

(a)   Enter judgment for actual damages, in such amount as proved at trial together with interest thereon, and statutory damages in favor of ANTONIO VALLEJO and against Defendants, NATIONSTAR and U.S. BANK, pursuant to 15 U.S.C. §§ 1681n and 1681o;

45

(b)     Enter judgment for punitive damages;

(c)     Award ANTONIO VALLEJO court costs and attorneys' fees, against the Defendants, NATIONSTAR and U.S. BANK pursuant to § 15 U.S.C. §§ 1681n and 1681o; and

(d)     Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT IV – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, §§ 501.201 ET SEQ.,  – (NATIONSTAR)

257.     Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, and 69 through 139, and 141 through 189 as if fully set forth herein.

258.     This is an action founded on NATIONSTAR's violation of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201 et seq. ("FDUPTA").

259.     VALLEJO is a "consumer" as defined under Fla. Stat. § 501.203(7).

260.     NATIONSTAR is engaged in "trade or commerce" as defined under Fla. Stat. § 501.203(8).

261.     The conduct alleged in this Complaint against NATIONSTAR constitutes unconscionable acts or practices, or unfair or deceptive acts and/or unfair practices in the conduct of any trade or commerce.

262.     NATIONSTAR has committed unlawful acts and practices, defined in Fla. Stat. § 501.204 as "(1) unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

263.    NATIONSTAR violated 15 U.S.C. § 1692 et. seq  because commencing on September 4, 2014 and continuing to the present, NATIONSTAR misrepresented the legal status of the alleged debt by mailing letters, notices, statements, and documents to VALLEJO that it was entitled to collection of the debt via  the Promissory Note, and via threats of enforcement of the Mortgage *in rem* against the Subject Property, notwithstanding that the Mortgage was stripped and deemed unsecured, and the debt on the Promissory Note was discharged in the Bankruptcy Action.  As such, there was no basis in law or in equity for the threat of enforcement of the Promissory Note or Mortgage, and the mailing of letters, notices, statements and documents to VALLEJO constituted violations of 15 U.S.C. § 1692.

264.    VALLEJO suffered actual damages as a result of the conduct of NATIONSTAR.

265.    It has been necessary for VALLEJO to retain the undersigned to represent him in this action.  VALLEJO will incur costs and other related expenses to bring this action and is entitled to recover his attorney's fees and costs pursuant to §501.2105 (Fla. Stat.).

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

(a)    Enter judgment for damages in favor of ANTONIO VALLEJO and against Defendant NATIONSTAR, in such amount as proved at trial, together with interest thereon;

(b)    Enter judgment for punitive damages;

(c)     Pursuant to § 501.2105, Fla. Stat., award ANTONIO VALLEJO his attorneys' fees, costs and other expenses against the Defendant NATIONSTAR; and

(d)     Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT V – VIOLATION OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT, §§ 559.55 ET SEQ., - (U.S. BANK and NATIONSTAR)

266.    Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 75, 116 through 189 as if fully set forth herein.

267.    This is an action for injunctive relief and for damages, as authorized by Section 559.77, *Florida Statutes*, commonly referred to as the Florida Consumer Collection Practices Act ("FCCPA").

268.    All or part of the transactions complained of herein occurred in Broward County, Florida.

269.    Despite the fact that U.S. BANK, and NATIONSTAR knew that they had no legitimate claim or legal right under the Promissory Note and Mortgage by virtue of the Cramdown Order and Discharge Order, U.S. BANK and NATIONSTAR have repeatedly made unlawful demands on VALLEJO for payment on the Promissory Note and Mortgage and attempted to enforce a claim for payment in violation of § 559.72(9), *Florida Statutes*.

270.    U.S. BANK'S agent, NATIONSTAR, sent Flood Insurance notices misrepresenting the secured status of the debt.

48

271.   U.S. BANK'S agent, NATIONSTAR, sent a demand letter to VALLEJO asserting that the notice was "being sent as required by the terms of the security instrument securing your mortgage loan," and further stated "failure to pay … may result in acceleration of sums secured by the Security Instrument, foreclosure proceedings and sale of the property."

272.   Demand Letter clearly expresses an intention to pursue collection against the Subject Property despite the unsecured nature of the debt which constituted a misrepresentation regarding the legal status of the debt.

273.   U.S. BANK'S agent, NATIONSTAR, misrepresented the legal status or nature of the debt in notices sent to VALLEJO, which stated that "Your loan is currently in the Foreclosure process," thereby misstating the secured nature of the debt that was in fact no longer secured.

274.   NATIONSTAR'S letters, notices, statements and documents included alleged debts for legal fees, property inspections, taxes, and insurance, among other alleged debts which it knew VALLEJO did not owe.

275.   NATIONSTAR'S letters, notices, statements and documents included threats of foreclosure which legal action it knew it was not entitled to

276.   The violations by U.S. BANK and NATIONSTAR were intentional or resulted from a failure of U.S. BANK and NATIONSTAR to employ policies and procedures specifically designed to preclude debt collection efforts for loans that have been stripped, discharged, or otherwise resolved in bankruptcy and that may no longer be the subject of debt collection efforts.

277.    Any errors committed by U.S. BANK and NATIONSTAR were not objectively reasonable or occurred because the policies and procedures of U.S. BANK and NATIONSTAR were not reasonably adapted to avoid the occurrence of such errors.

278.    As a direct and proximate cause of the conduct of U.S. BANK and NATIONSTAR, VALLEJO has suffered ongoing economic damages.

279.    It has been necessary for VALLEJO to retain the undersigned to represent him in this action.

280.    VALLEJO will incur costs and other related expenses to bring this action and is entitled to recover his attorney's fees and costs pursuant to §559.77, Fla. Stat.

281.    VALLEJO seeks punitive damages as provided § 559.77(2) and §768.72, Fla. Stat. upon a sufficient showing on the record of a basis for bringing the action.

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

(a)    Enter judgment for damages in favor of ANTONIO VALLEJO and against Defendants, U.S. BANK and NATIONSTAR, in such amount as proved at trial, together with interest thereon;

(b)    Enjoining U.S. BANK and NATIONSTAR from further conduct that violates § 559.55 et seq., Fla. Stat. including any efforts to collect on the Promissory Note and Mortgage;

(c)    Pursuant to § 559.77, Fla. Stat., award ANTONIO VALLEJO actual damages, statutory damages in the amount of $1,000.00, punitive damages, court costs and attorneys' fees, against the Defendants, U.S. BANK and NATIONSTAR; and

(d)     Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT VI – FRAUDULENT MISREPRESENTATION (NATIONSTAR)

282.    Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 139, and 141 through 189, as if fully set forth herein.

283.    NATIONSTAR made false statements of material fact to VALLEJO regarding the debt which VALLEJO allegedly owed, and regarding its right to enforce the security interest.

284.    NATIONSTAR made the false statements of material fact when it, as servicing agent for its principal, U.S. BANK, filed a 2017 foreclosure action against VALLEJO, which sought to enforce the extinguished mortgage and collect a discharged debt.

285.    NATIONSTAR also made the false statements of material fact when it, as servicing agent for its principal, U.S. BANK, sent various letters, notices, statements, insurance default letters, notices of default, and other correspondence to VALLEJO, which sought to enforce the extinguished mortgage and collect a discharged debt.

286.    NATIONSTAR also made false statements of material fact when it, as servicing agent for its principal, U.S. BANK, communicated the debt to third parties.

287.    NATIONSTAR knew or should have known its statements were false because NATIONSTAR was privy to and/or a party to the previous bankruptcy proceedings, including the Cramdown Order and Discharge Order, which forbade it from

seeking to enforce the mortgage and note, and because NATIONSTAR was aware of the dismissal of the 2011 foreclosure case, and was represented by legal counsel in all respects.

288.    NATIONSTAR intentionally misrepresented the legal status of the debt by asserting it was entitled to collection of the debt via the Promissory Note, and via the threat of enforcement of the Mortgage *in rem* against the Subject Property, notwithstanding its full knowledge the Mortgage was stripped and deemed unsecured, and the debt on the Promissory Note was discharged in the Bankruptcy Action.

289.    NATIONSTAR made the false statements of material fact with intent to induce VALLEJO to pay money.

290.    VALLEJO suffered damages as a result of NATIONSTAR'S false statements.

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

(a)    Enter judgment for damages in favor of ANTONIO VALLEJO and against Defendant NATIONSTAR, in such amount as proved at trial, together with interest thereon;

(b)    Enter judgment for compensatory damages in an amount to be determined at trial;

(c)    Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## COUNT VI – FRAUDULENT MISREPRESENTATION (U.S. BANK)

291.    Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 139, and 141 through 189, as if fully set forth herein.

292.    At all times material, U.S. BANK was acting as the principal for its agent, NATIONSTAR.

293.    U.S. BANK is vicariously liable for the actions of its servicer, NATIONSTAR and any damages pertaining thereto because NATIONSTAR was acting on behalf of U.S. BANK as its attorney-in-fact and U.S. BANK exercised control over the actions of NATIONSTAR.

294.    NATIONSTAR made false statements of material fact to VALLEJO regarding the debt which VALLEJO allegedly owed, and regarding its right to enforce the security interest.

295.    NATIONSTAR made the false statements of material fact when it, as servicing agent for its principal, U.S. BANK, filed a 2017 foreclosure action against VALLEJO, which sought to enforce the extinguished mortgage and collect a discharged debt.

296.    NATIONSTAR also made the false statements of material fact when it, as servicing agent for its principal, U.S. BANK, sent various letters, notices, statements, insurance default letters, notices of default, and other correspondence to VALLEJO, which sought to enforce the extinguished mortgage and collect a discharged debt.

297.    NATIONSTAR also made false statements of material fact when it, as servicing agent for its principal, U.S. BANK, communicated the debt to third parties.

298.    NATIONSTAR knew or should have known its statements were false because NATIONSTAR was privy to and / or a party to the previous bankruptcy proceedings, including the Cramdown Order and Discharge Order, which forbade it from seeking to enforce the mortgage and note, and because NATIONSTAR was aware of the dismissal of the 2011 foreclosure case, and was represented by legal counsel in all respects.

299.    NATIONSTAR intentionally misrepresented the legal status of the debt by asserting it was entitled to collection of the debt via the Promissory Note, and via the threat of enforcement of the Mortgage *in rem* against the Subject Property, notwithstanding its full knowledge the Mortgage was stripped and deemed unsecured, and the debt on the Promissory Note was discharged in the Bankruptcy Action.

300.    NATIONSTAR made the false statements of material fact with intent to induce VALLEJO to pay money.

301.    VALLEJO suffered damages as a result of NATIONSTAR'S false statements.

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

       (a)    Enter judgment for damages in favor of ANTONIO VALLEJO and against Defendant U.S. BANK, in such amount as proved at trial, together with interest thereon;

       (b)    Enter judgment for compensatory damages in an amount to be determined at trial;

       (c)    Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

54

## COUNT VII – MALICIOUS PROSEUCTION (U.S. BANK and NATIONSTAR)

302.   Plaintiff, ANTONIO VALLEJO, adopts and re-alleges each and every allegation contained in Paragraphs 3 through 8, 69 through 75, and 140, as if fully set forth herein.

303.   U.S. BANK and NATIONSTAR commenced a wrongful foreclosure against VALLEJO.

304.   U.S. BANK and NATIONSTAR caused the wrongful foreclosure to be commenced against VALLEJO.

305.   The foreclosure lawsuit was terminated against VALLEJO.

306.   U.S. BANK and NATIONSTAR had no probable cause to commence a foreclosure against VALLEJO.

307.   U.S. BANK and NATIONSTAR commenced the lawsuit with malice against VALLEJO.

308.    As a result of U.S. BANK's and NATIONSTAR'S lawsuit, VALLEJO suffered damages.

WHEREFORE, Plaintiff, ANTONIO VALLEJO respectfully requests that the Court:

(a)   Enter judgment for damages in favor of ANTONIO VALLEJO and against Defendants in such amount as proved at trial, together with interest thereon;

(b)   Enter judgment for compensatory damages in an amount to be determined at trial;

(c)   Grant to ANTONIO VALLEJO such further relief as this Court deems just, necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, ANTONIO VALLEJO hereby demands a trial by jury on all issues so triable.

Respectfully submitted on this 26th day of November, 2018 by:

**OPPENHEIM PILELSKY, PA,**
Attorneys for Plaintiff,
ANTONIO VALLEJO,
2500 Weston Road, Suite 404
Weston, Florida 33331
Phone:              (954) 384-6114
Facsimile:          (954) 384-6115

By:  /s/ Roy D. Oppenheim
Roy D. Oppenheim, Esq.
Florida Bar No.: 0710016
Geoffrey E. Sherman, Esq.
Florida Bar No.:  0060432
Marisa D. Ajmo, Esq.
Florida Bar No.: 900966
E-mail:              roy@oplaw.net
E-mail:              geoffrey@oplaw.net
E-mail:              marisa@oplaw.net
Service E-mail:      service@oplaw.net

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of Plaintiff's First Amended

Complaint and Exhibits has been served to all parties identified on the attached Service

List and to the Clerk of the Court by CM/ECF on this 26 day of November, 2018.

             /s/ Roy D. Oppenheim
             Roy D. Oppenheim, Esq.

## <u>SERVICE LIST</u>

Mark J. Gottlieb, Esq.
Gregory T. King, Esq.
Akerman LLP
*Attorneys for Defendants*
350 East Las Olas Blvd., Suite 1600,
Ft. Lauderdale, FL 33301
E-mail    to:    gregory.king@akerman.com;
thelma.white@akerman.com;
marc.gottlieb@akerman.com;
joyce.gutierrez@akerman.com